UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------x
KEITH ROBINS,

                Plaintiff,

    -against-

MICHAEL J. ASTRUE, COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.
------------------------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. CV-10-3281 (FB)

*Appearances:*
*For the Plaintiff:*
CHARLES E. BINDER, ESQ.
60 East 42nd Street, Suite 520
New York, NY 10165

*For the Defendant:*
LORETTA E. LYNCH, ESQ.
United States Attorney
Eastern District of New York
By: JOHN VAGELATOS, ESQ.
     Assistant United States Attorney
     271 Cadman Plaza East
     Brooklyn, New York 11201

**BLOCK, Senior District Judge:**

        Plaintiff, Keith Robins ("Robins"), seeks review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits ("DIB") under the Social Security Act ("the Act"). Both parties move for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).

        Robins argues that the Commissioner failed to (1) adequately develop the record, (2) quantify his exertional limitations in determining his residual functional capacity ("RFC"), (3) properly evaluate his credibility and (4) consider new and material evidence of his disability. He seeks remand for further evidentiary proceedings.

For the reasons stated below, Robins' motion is granted and the Commissioner's is denied.

I

Robins—a former nurse's aide and ambulatory care technician—applied for DIB on June 21, 2007, alleging disability as of September 12, 2001 due to, *inter alia*, complications from a severe heel injury he incurred when responding to the September 11 terrorist attacks. His application was denied and he requested a hearing before an Administrative Law Judge ("ALJ"). Robins appeared *pro se* at the hearing, which was held on November 29, 2007.

On November 21, 2008, the ALJ determined that Robins (1) was not engaged in substantial gainful activity; (2) had severe medically determinable impairments — namely, a status post left ankle fracture and gouty arthritis, (i.e., joint inflammation caused by a build-up of uric acid);[1] (3) did not have any impairment that met or medically equaled an impairment listed in C.F.R. § 404, Subpart P, Appendix 1 ("Listed Impairment"); (4) did not retain the residual functional capacity ("RFC") to perform his past relevant work; but (5) could, given his RFC, age, education and work experience, perform the full range of sedentary work available in the national economy. *See* 20 C.F.R. § 404.1520(b)-(g) (setting forth the prescribed five-step analysis).

---

[1] The ALJ also noted hypertension, reported history of seizures and longstanding history of alcohol abuse, but determined that none of these impairments was severe. Robins has not challenged that finding.

In making his determination, the ALJ considered Robin's hospital and treatment recordsrecords demonstrated, *inter alia*, that Robins underwent surgery in September 2001 to repair his fractured heel — a procedure which involved the placement of screws to realign the bones in his foot. Subsequently, when Robins complained to a treating physician of foot pain, x-rays revealed diffuse osteopenia (low bone density) and breaks in two of the screws. Administrative Record ("AR") at 280-81. Over the next five years, Robins periodically sought medical attention for complaints of pain and swelling in his heel and knee; physician treatment notes taken during that time continued to cite broken screws in his heel and included the diagnosis of gouty arthritis. *See, e.g.*, AR at 126, 135, 173-76, 181-85, 228-32. On June 1, 2007 — nearly four months before Robins applied for DIB — he was advised by the City of New York Human Resources Administration that he was unable to work and might be eligible for federal disability benefits. *See* AR at 288.

The ALJ also considered Robins's hearing testimony regarding the limiting effects of his symptoms. Robins testified that his pain was severe and that he was prescribed morphine, Naproxen and Dopamine to alleviate it. He further testified that the pain left him unable to perform household chores and required him to spend most of his time lying down. While acknowledging that Robins's impairments caused pain and affected his ability to carry out certain tasks, the ALJ found that "treating records fail to document manifestations of musculoskeletal pathology of such severity as to cause the disabling degree of pain and loss of functioning alleged by [Robins]." AR at 299. Specifically, the ALJ concluded that the "infrequency and sporadic nature of [Robins's] doctors visits," his "admitted lack of compliance in taking medications as prescribed," and

"his testimony that he generally takes only Naproxen for his alleged pain" undermined the complaints of severe pain. *Id.*

The ALJ did not obtain any medical opinions from any of Robins's treating physicians. Instead, he relied on the assessment of Dr. Aurelio Salon, a consultative physician who examined Robins at the Commissioner's request. Dr. Salon opined that Robins's "ability to stand and his capacity to climb, push, pull, or carry heavy objects would be restricted," but that there were "no objective findings to support the fact that he would be restricted in his ability to sit." AR at 212. In support of the latter opinion, Dr. noted that Robins had "a full range of motion of both knees, ankles, and hips" and "full strength in both lower extremities." AR at 299.

Ostensibly affording Robins "every reasonable benefit of the doubt concerning his alleged difficulties in ambulation and standing due to lower extremity pain," AR at 299, the ALJ concluded that he could nevertheless perform a full range of sedentary work. The ALJ did not quantify Robins's exertional limitations by, for example, assigning a maximum to the amount of weight he could lift or the amount of time he could sit.

On September 17, 2009, the Appeals Council denied Robins' request to review the ALJ's decision. *See* AR at 11-13. At some point thereafter, Robins retained counsel. On February 3, 2010, counsel submitted a letter brief arguing that the ALJ failed to adequately develop the record and to provide a function-by-function analysis of Robins's RFC. On April 9, 2010, counsel submitted additional evidence from Dr. Raisa Oklander, Robins's new treating physician. In a Multiple Impairment Questionnaire dated April 5, 2010, Dr.

4

Oklander stated that she had been treating Robins since January 2009, had diagnosed him with "severe debilitating osteoarthritis," and considered his prognosis to be "debilitating." Pl.'s Br., Ex. 1. at 6.[2] Dr. Oklander opined that Robins was in constant pain, and could not lift and/or carry more than five pounds, nor sit, stand and/or walk for more than an hour in an eight-hour day. Id. at 8-9.

On May 25, 2010, the Appeals Council set aside its previous decision "to consider additional information." AR at 2. The council referred to the February 3rd submission, but not the April 9, 2010 submission. In any event, it once again denied review, finding that the additional information submitted provided "no reason under our rules to review the [ALJ's] decision." Robins timely sought judicial review.

## II

In reviewing a determination of the Commissioner, "a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004). Substantial evidence is "more than a mere scintilla," and should be that which "a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotations marks and citation omitted).

---

[2]Counsel's April 9th submission is not in the Administrative Record. Since, however, the Commissioner concedes that it was properly presented to the Appeals Counsel, the Court has considered them.

## A. Duty to Develop Record

"[T]he social security ALJ, unlike a judge in a trial, must on behalf of all claimants ... affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508-09 (2d Cir. 2009). "[I]t's the ALJ's duty to investigate and develop the facts and develop the arguments both for and against the granting of benefits." *Butts*, 388 F.3d at 386. "When a claimant properly waives his right to counsel and proceeds *pro se*, the ALJ's duties are 'heightened.'" *Moran v. Astrue*, 569 F.3d 108, 113 (2d Cir. 2009) (citing *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)).

Robins argues that the ALJ did not adequately discharge his duty to develop the record because he did not attempt to obtain medical opinions from Robins's treating physicians. The Commissioner contends that the medical records obtained were sufficient to make a disability determination. *See Rosa v. Callahan*, 68 F.3d 72, 79 n. 5 (2d Cir. 1999) ("[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim."). Further, he Commissioner argues that opinions from Robin's treating physicians would not have been material in light of the lapse of time between treatment and the hearing.

The Commissioner's own regulations refute his arguments. 20 C.F.R. § 404.1513(b)(6) states that a treating sources medical report should include "[a] statement about what [the claimant] can still do despite [his or her] impairment(s)." Although the regulation provides that the lack of such a statement will not render a report incomplete,

6

it nevertheless promises that the Commissioner will request one. *See id.; see also id.* §§ 404.1512(d) ("We will make every reasonable effort to help you get medical reports from your own medical sources when you give us permission to request the reports."), 404.1512(d) ("We will seek additional evidence or clarification from your medical source when [the initial] report does not contain all the necessary information . . . ."). Social Security Ruling 96-5p confirms that the Commissioner interprets those regulations to mean that "[a]djudicators are generally required to request that acceptable medical sources provide these statements with their medical reports." 1996 WL 374183, at *4 (SSA July 2, 1996). His interpretations are "binding on all components of the Social Security Administration," 20 C.F.R. § 402.35(b)(2).

Case law underscores the importance of this rule. As Judge Spatt cogently explained,

> it is not sufficient for the ALJ simply to secure raw data from the treating physician. What is valuable about the perspective of the treating physician — what distinguishes him from the examining physician and from the ALJ — is his opportunity to develop an informed *opinion* as to the physical status of a patient. To obtain from a treating physician nothing more than charts and laboratory test results is to undermine the distinctive quality of the treating physician that makes his evidence so much more reliable than that of an examining physician who sees the claimant once and who performs the same tests and studies as the treating physician.

*Peed v. Sullivan*, 778 F. Supp 1241, 1246 (E.D.N.Y. 1991). Although *Peed* involved an opinion as to the nature of an impairment, its message is no less apt with respect to opinions as to a claimant's RFC. Since the ALJ did not ask any of Robins's treating physicians to opine on his RFC, remand is required.

7

In light of this conclusion, the Court need not address Robins's remaining arguments. It opts to do so to avoid, if possible, the need for further judicial review.

## B. RFC Functional Analysis

Robins argues that the ALJ erred by failing to quantify his exertional limitations. The Second Circuit has not definitively opined on an ALJ's obligation to quantify RFC on a function-by-function basis, and lower courts have reached different conclusions "as to whether a function-by-function analysis is required or merely desirable." *Carway v. Astrue*, 2010 WL 6121686, at *9 (S.D.N.Y. Aug. 17, 2010) (citation and internal quotation marks omitted).

In the Commissioner's view, however, an RFC assessment "must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis.... Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1 (SSA July 2, 1996). As noted, Social Security rulings are binding. On remand, therefore, the ALJ must assess Robins's RFC on a function-by-function basis before determining what exertional level of work he can do.

## C. Credibility Assessment

The Commissioner has established a two-step inquiry to evaluate the credibility of a claimant's statements regarding the limiting effects of his or her symptoms. *See* 20 C.F.R. § 404.1529. First, the ALJ must determine whether the medical signs or laboratory findings show that the claimant has a medically determinable impairment or impairments that could reasonably be expected to produce the relevant symptom – here,

pain. *See id.* § 404.1529(b). Second, he or she must evaluate the intensity, persistence and limiting effects of the symptom, which requires a credibility assessment based on the entire case record. *See id.* § 404.1529(c). Relevant factors include (1) the claimant's daily activities; (2) the location, duration, frequency and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate her pain or other symptoms; (5) treatment, other than medication, the claimant receives or has received for relief of her pain or other symptoms; (6) any measures the claimant uses or has used to relieve her pain or other symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. *See* 20 C.F.R. § 404.1529(c)(3)(i)-(vii).

In discounting Robins's complaints of pain, the ALJ considered the infrequency of his doctors visits and his failure to take the stronger of his prescribed medications. Since both are relevant factors, *see id.* § 404.1529(c)(3)(iv & v), the Court cannot say that the ALJ's credibility assessment was erroneous.

### D. New Evidence

"If new and material evidence is submitted [after the ALJ's decision], the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the [ALJ's] decision." 20 C.F.R. § 404.970(b). If a claimant submits evidence to the Appeals Council that does not relate to the period on or before the date of the ALJ's decision, the Appeals Council must return the additional evidence with an explanation as to why it did not accept it, and advise the claimant of his or her right to file

a new application for benefits. *See id.* § 404.976(b).

Since Dr. Oklander's opinions unequivocally conflict with the ALJ's RFC assessment, the only issue is whether those opinions bear on Robins's condition on or before November 21, 2008. On the present record, the Court cannot determine whether Dr. Oklander was offering a retroactive opinion on Robins's pre-hearing condition, or an opinion on some post-hearing exacerbation that would require Robins to file a new application for benefits. That question, therefore, is another that the ALJ must address on remand.

### III

Robin's motion for judgment on the pleadings is granted, the Commissioner's motion is denied, and the case is remanded for further proceedings. On remand, the ALJ must, first, request RFC assessments from Robins's treating physicians. Second, he must determine whether Dr. Oklander's opinions reflect Robins's pre- or post-hearing condition; that determination may require him to ask Dr. Oklander to clarify that aspect of her opinions. He must then reassess Robins's RFC on a function-by-function basis, taking into account any RFC assessments provided in response to his requests and—if relevant to Robins's pre-hearing condition—Dr. Oklander's opinions.

**SO ORDERED.**

s/ Judge Frederic Block

FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
June 15, 2011